161 So. 23

**WINKLER v. ASCENSION BANK & TRUST CO.**

No. 30377.

April 1, 1935.

Rehearing Denied April 29, 1935.

Guion & Upton, of New Orleans, and Walter Lemann, of Donaldsonville, for appellant.

Clyde V. St. Amant, of Donaldsonville, and William A. Porteous, Jr., of New Orleans, for appellee.

O'NIELL, Chief Justice.

Alfred E. Winkler brought this suit against the Ascension Bank & Trust Company for the amount of an alleged equity in seven mortgage notes, amounting to $16,000. He alleged that he had pledged the notes to the bank to secure the payment of his note for $15,000, for a loan made by the bank to him on the

2d of January, 1922; and that he paid $2,-500 on his note in December, 1922, and paid the interest on the balance, $12,500, to the 1st day of January, 1923. Hence he prayed for a judgment against the bank for the amount of the seven mortgage notes, $16,-000, plus the interest thereon at 8 per cent. per annum from their date, July 24, 1920, and 10 per cent. attorney's fee, as stipulated in the notes, less the balance due on his note, $12,500, and the stipulated interest, 8 per cent. per annum, from the 1st day of January, 1923. He sued also for the return of a mortgage note for $4,000, which was pledged as additional security for the payment of his note for $15,000. Before the case came to trial, Leo Winkler acquired Alfred E. Winkler's interest in the suit, and was substituted as the plaintiff, by an order of the district judge. Having heard the evidence, the judge decided in favor of the bank, rejecting the plaintiff's demand. He has appealed from the decision. The bank went into liquidation after the appeal was taken; and the state bank commissioner and the special liquidator have appeared in this court and become parties to the appeal, as appellees.

The only testimony offered on the trial of the case was that of the cashier of the bank, who was also a vice president of the bank, and who held those positions continuously during the time of the transactions referred to in this case. He was called as a witness on cross-examination by the attorneys for the plaintiff. The facts that were disclosed, so far as they are essential to a solution of the case, are not disputed.

Alfred E. Winkler borrowed $15,000 from the bank on the 2d of January, 1922, giving his personal note for the amount, payable on demand, and bearing interest at 8 per cent. per annum from its date. He pledged as collateral security for the payment of the note seven mortgage notes belonging to him, signed and indorsed by Gaston Bordis, dated July 24, 1920, and payable, respectively, on the 15th of November, 1920, 1921, 1922, 1923, 1924, 1925, and 1926; three of the notes being for $2,000 each, and four of them being for $2,500 each. The seven notes were secured by a mortgage on a farm belonging to Gaston Bordis. He sold the farm to C. D. Lebermuth on the 18th of March, 1922; the price stated in the deed being $50 cash and Lebermuth's assuming the payment of the seven mortgage notes for $16,000, which Winkler had pledged to the bank. Lebermuth was then a director and vice president of the bank, and continued to be a director and vice president of the bank until he died, after this suit was filed. His heirs accepted his succession unconditionally, and were cited as defendants in the suit. Alfred E. Winkler paid $2,500 on his note for $15,000 at the bank, on the 15th of December, 1922, and at the same time paid the interest, amounting to $900, on the balance, $12,500, to the 1st day of January, 1923. Strange to say, the bank, besides crediting the payment of $2,500 on Winkler's $15,000 note, also canceled one of the mortgage notes, for $2,500, belonging to Winkler. The mortgage was not canceled from the public record, but the note itself was stamped, or perforated, "Paid 12–15–22," and was retained by the bank. There is no explanation as to

why the bank applied the payment of $2,500, not only to the reduction of Winkler's debt of $15,000, but also to the payment of a mortgage note belonging to Winkler, and owed by Bordis and assumed by Lebermuth. Winkler did not make any further payment on his debt to the bank. About the 1st of March, 1924, he departed from the state and took up his residence in Cleveland, Ohio. The bank, without informing Winkler, closed out his indebtedness of $12,500 by having Lebermuth assume it, and by turning over to him all of the mortgage notes which Winkler had pledged to the bank. The cashier, testifying from memory, said that the bank sold to Lebermuth, for the amount of Winkler's indebtedness to the bank, all of the mortgage notes which Winkler had pledged to the bank, and that Lebermuth paid the debt by giving his personal note for $12,500, and by pledging to the bank the same mortgage notes which he had just bought from the bank. But, after examining the records of the bank, the cashier ascertained and testified that Lebermuth did not give the bank his personal note, but merely handed back to the bank, as representing his indebtedness, the six remaining and uncanceled Bordis mortgage notes, amounting to $13,500, which the bank had sold to Lebermuth (with the $4,000 mortgage note) for the amount of Winkler's indebtedness to the bank. In order that the six Bordis notes, amounting to $13,500, should represent an indebtedness of only $12,500, the bank, arbitrarily, and without receiving any consideration therefor, entered a credit of $1,000 on the back of one of the $2,000 notes. Lebermuth retained the $4,000 mortgage note, and, in April, 1924, brought foreclosure proceedings against Winkler, through a curator ad hoc, and on the 26th of May, 1924, bought the mortgaged property at the sheriff's sale for only $600. The court costs and curator's fee amounted to $63, and the remaining $537 was accounted for by Lebermuth's taking credit for an attorney's fee of $447.64, and retaining $89.36 as a credit on the $4,000 note. Lebermuth paid the interest on the $12,500 indebtedness to the bank, every year, to the 15th of November, 1926. On the 7th of November, 1927, the heirs of Lebermuth, having sold to W. H. Webb the farm which Lebermuth had bought from Bordis, paid the indebtedness of $12,500 to the bank, by substituting, for the six remaining Bordis mortgage notes, a mortgage note for $12,500 which the Lebermuth heirs had received from Webb.

Winkler alleged in his petition in this suit that Lebermuth was acting for and on behalf of the bank, as the bank's alter ego, so to speak, in buying from Gaston Bordis the property which was mortgaged to secure the payment of the seven notes which Winkler had pledged to the bank; and, hence, that the bank itself, and not Lebermuth personally, assumed the obligation to pay the seven mortgage notes. The cashier of the bank testified that Lebermuth bought the property for himself, and not for the bank, and that his purpose was to assist Winkler, who believed that he had a valuable equity in the mortgage notes which he had pledged to the bank. There is no contradiction of that testimony. The plaintiff, however, had some justification and support for his theory of the bank's liability, in that Lebermuth, being a director and an officer of the bank, must have held the bank's interest above any personal

interest, in dealing with the property which was mortgaged to secure the payment of notes which were pledged to the bank. It is a matter of no importance, however, so far as the bank's liability to Winkler is concerned, whether Lebermuth acted for himself or for the bank in buying from Bordis the property which was mortgaged to secure the payment of the notes which were pledged to the bank. If Lebermuth was personally liable for having assumed the payment of these mortgage notes, for $16,000, as the bank admits or contends, the bank should not have surrendered them to him, or released him from the obligation, on his paying only $12,500. The mortgage notes belonged not to the bank, but to Winkler. The cashier of the bank testified that Lebermuth was a man of means and was well able to pay, at any time during these transactions, not only $16,000, but three times that sum. It is true that the note which Winkler owed the bank, originally for $15,000, contained the stipulation that, if Winkler failed to pay the note at maturity, the bank had the right to dispose of the collaterals either at public or at private sale, without appraisement, and to become the purchaser of them, in payment or part payment of the principal obligation. But that did not give the bank the right to release one who was personally obligated to pay and well able to pay the full amount of the notes, on payment of a sum less than the amount of the notes. The bank has shown no warrant for the canceling of one of the mortgage notes, for $2,500, when Winkler, who owned the mortgage notes, paid the $2,500 on the $15,000 note which he owed. The bank has shown no warrant for crediting another of the mortgage notes, for $2,000, with a payment of $1,000, when no such payment was made by any one. These credits, amounting to $3,500, are what reduced the $16,000 of mortgage notes to $12,500, the amount for which Lebermuth, who had assumed the obligation to pay the $16,000, acquired the $16,000 worth of notes from the bank, together with the $4,000 mortgage note. Our conclusion, therefore, is that the bank is liable for having released from his obligation, to the extent of $3,500, the bank director who was personally bound to pay, and well able to pay, the whole $16,000, represented by the seven mortgage notes which belonged to Winkler. The bank's liability is the same as if Lebermuth had been the original maker of the seven mortgage notes, for the payment of which he was thoroughly responsible financially.

 The attorney who represented the bank in the trial of this case objected promptly to the introduction of evidence when it tended to prove a cause of action somewhat different from that which was alleged in the plaintiff's petition. The judge admitted the evidence subject to the objection, but did not afterwards give a ruling on the question of admissibility of the evidence. We have concluded that it was admissible. The difference between the cause of action which was alleged and that which was proved was only in the theory on which the bank's liability rested. The bank was not taken by surprise by the proof which was made, because the bank was aware of the fact, and the plaintiff was not. The only way by which the plaintiff could obtain the exact information was by questioning an officer of the bank, as a witness in the case. Before filing the

suit, the attorneys for Alfred E. Winkler wrote several letters to the bank, asking for information as to how the bank had disposed of Winkler's mortgage notes; and the bank declined to give any information on the subject. That is an additional reason why, on the trial of the case, the plaintiff should not have been held down to only such proof as was strictly in accord with the theory advanced in his petition. The rule which requires that a plaintiff's proof must conform strictly with his allegations is founded upon the principle of fair play, to avoid taking a defendant by surprise, and to put an end to whatever complaint the plaintiff really has. There is no avoidance or evasion of the rule, or of its underlying principle, in our ruling in this case.

█ █ With regard to the plaintiff's demand for a return of the $4,000 mortgage note which he pledged to the bank, no such relief can be had in this case, because the note was disposed of by Leberman's foreclosure proceedings against Alfred E. Winkler, by the appointment of a curator ad hoc. If Alfred E. Winkler or his subrogee has a just claim against the bank on that score, his right will be reserved to intervene in the liquidation of the affairs of the bank. On the seven other mortgage notes which the bank disposed of, the bank owes Leo Winkler, as subrogee, $3,500, with interest at 8 per cent. per annum from the 24th of July, 1920, and 10 per cent. on the total amount for the attorney's fee. There was no contractual obligation on the part of the bank to pay the attorney's fee; and, as a rule, a plaintiff is not entitled to collect his attorney's fee from the defendant, merely for being successful in his lawsuit, except where the obligation is imposed by statute, as in the case of dissolving a conservatory writ. But, in this instance, Alfred E. Winkler had a good and valid contract for the payment of his attorney's fee on each of his mortgage notes; and the bank deprived him of the benefit of that contract, as to $3,500 worth of his mortgage notes. For that reason, the bank is liable for the attorney's fee.

The judgment appealed from is annulled and set aside, and it is ordered, adjudged, and decreed that Leo Winkler, as subrogee of Alfred E. Winkler, is a creditor of the Ascension Bank & Trust Company, in liquidation, to the extent of $3,500, together with interest thereon at 8 per cent. per annum from the 24th day of July, 1920, and 10 per cent. attorney's fee on the total sum, and the costs of this suit; all to be paid in the regular course of liquidation of the affairs of the bank. The right of Alfred E. Winkler, or his subrogee, is reserved to assert by way of intervention in the liquidation proceedings whatever claim he may have by reason of the bank's having disposed of his mortgage note of $4,000.