44 So.2d 215 (1950)
FIDELITY & DEPOSIT CO. OF MARYLAND
v.
REDNOUR.
No. 19334.
Court of Appeal of Louisiana, Orleans.
January 30, 1950.
*216 Sidney G. Roos, New Orleans, for defendant and appellant.
Phelps, Dunbar, Marks & Claverie, New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
This suit was brought by Fidelity and Deposit Company of Maryland, as subrogee of Mrs. A. V. Reitsma, against Mrs. Caroline Catherine Schick Rednour, widow of William Rednour, doing business as William Rednour Transfer and Storage Company, for the value of certain articles stored by Mrs. Reitsma with defendant, a warehouseman, said articles having been lost while in defendant's keeping.
The substance of the allegations of the petition is that on September 11, 1944, at her residence in New Orleans, Mrs. Reitsma delivered to defendant's drayman a chest containing her personal and separate effects, which defendant agreed to warehouse and store. That on or about November 11, 1944, Mrs. Reitsma instructed defendant to deliver to her the aforesaid chest and contents, which were of a value of $450.50, but the defendant, who claims that the chest has been lost in some unaccountable manner, has failed to make delivery thereof.
The petition then alleges that on February 20, 1945, Mrs. Reitsma subrogated to plaintiff the claim against defendant.
Defendant, after denying the allegations of the petition, set up two special defenses: (1) that defendant acted prudently and kept her warehouse guarded at all times by a watchman, and that all doors, entrances, and exits were kept properly locked, secured, and fastened, and, alternatively, (2) that if defendant is liable, the extent of the liability cannot exceed the sum of $50 under the following provision of the warehoue receipt issued to Mrs. Reitsma, to-wit: "12. Our responsibility for any one-piece or package (and contents of such package) is limited to the sum of fifty dollars, unless value is declared at time of securing rate and special charge is made for higher valuation."
Plaintiff recovered judgment for $450.50, from which defendant has appealed.
Mrs. Reitsma, after sending the chest to defendant, left for Patterson, New Jersey; her husband followed her shortly thereafter. Their testimony, taken at Newark, New Jersey, de bene esse, in accordance with the provisions of Act 143 of 1934, shows that Mr. Reitsma telephoned defendant's establishment on September 11, 1944, requesting that the chest be picked up from 2315 Sere Street in New Orleans and stored for an indefinite period. Defendant's drayman received the chest from Mrs. Reitsma, who paid him, at the time, the hauling charges and one month's storage; she took the drayman's receipt for both the payments and "1 box."
In the latter part of October, 1944, Mr. and Mrs. Reitsma, who had temporarily returned to New Orleans, called at the warehouse and directed that the chest be delivered to them; defendant collected the hauling charge, plus the second month's storage, but has never returned the chest, explaining that it had been misplaced.
The chest and its contents had been insured along with other property against loss under a policy issued by plaintiff to *217 Mr. Reitsma, and in due course the Reitsmas made claim for the value of the effects, and ultimately received plaintiff's draft for $450.50 payable jointly to Mr. and Mrs. Ellsworth Reitsma. Coincidentally, they both executed a "Receipt and Release," and Mrs. Reitsma, by authentic act, which recited that the contents of the chest were her separate property, subrogated plaintiff to her claim against defendant. Her husband intervened in the act to authorize and assist her, and joined and concurred in the assignment and subrogation.
Defendant objected to the admissibility of the depositions and the documents attached thereto, upon several grounds, viz., (1) that they seek to enlarge the recitals of plaintiff's petition, (2) that they are immaterial and irrelevant, (3) that the petition does not set forth with particularity the nature of the damages claimed, and (4) that the petition alleges that plaintiff was subrogated to the rights of Mrs. Reitsma, a married woman, and, therefore, the subrogation is invalid because under our law a wife can make no valid disposition of a claim which belongs to the marital community.
These objections, after being referred to the merits of the case by the trial judge, were never passed upon. Defendant has reurged them before us.
The objections are unfounded. First, the testimony and subrogation are in strict conformance with the recitals of the petition, and in no manner tend to enlarge the pleadings. It seems to us, taking into consideration all of the declarations of the document, that Mr. Reitsma is irrevocably estopped from ever contesting his wife's separate ownership of the property. The situation here is analogous to a case where a husband is a party to an act of purchase, in which it is declared that the price belonged to the wife in her paraphernal right, and that the property is to be owned by her in her paraphernal right. The rule that a husband who makes such a solemn declaration cannot afterwards contradict or assail his assertions has been repeatedly reaffirmed. See Pfister v. Casso et al., 161 La. 940, 109 So. 770; Kerwin v. Hibernia Insurance Co., 35 La.Ann. 33.
Second, even assuming, arguendo, that the effects did belong to the community, the husband, as its head and master, is effectively bound by the subrogation. If, however, such was the situation, it may be that the petition did not technically set forth correctly a description of the instrument, but nevertheless the evidence is still admissible. It is true, as a general rule, that the allegata and probata must correspond, and that, in administration of proof, parties offering evidence must be confined to the allegations of their pleadings. But the rule is not without exceptions. Where the defendant is amply protected against being surprised or mislead, a variance between pleadings and proof, not affecting the gist of the action, is immaterial. United States Fidelity & Guarantee Co. v. Manthe, our docket No. 8249, opinion book 59, and cases therein cited. See Louisiana and Southern Digest.
There is no element of surprise in this case, and we cannot see how defendant has been mislead to her prejudice. The suit by the subrogee is for the value of the goods stored by Mrs. Reitsma and lost or misplaced in defendant's warehouse. The averments of the petition forcibly brought home to defendant the issue to be met in court. There is not the slightest possibility that defendant will be exposed to multiple liability.
In Winkler v. Ascension Bank & Trust Co., 182 La. 69, 161 So. 23, 26, the Supreme Court said: "* * * The rule which requires that a plaintiff's proof must conform strictly with his allegations is founded upon the principle of fair play, to avoid taking a defendant by surprise, and to put an end to whatever complaint the plaintiff really has. * * *"
Insofar as the vagueness or generality of plaintiff's claim is concerned, any complaint which defendant had was waived when the answer was filed. C.P arts. 332 and 333.
*218 In Doullut v. McManus, 37 La.Ann. 800, is to be found the following observation:
"The objection that the claim for specific damages has not been set forth and detailed under which plaintiff can recover, is likewise unfounded. That omission could not justify the exclusion of the evidence.
"It is well settled that vagueness, want of precision, or generality in the averments of a petition, should be taken advantage of by exception, which should be filed in limine before answer to the merits, unless the opposite party had therefrom no sufficient notice of the nature of the demand and would be surprised."
The value of the chest and the items therein is not in controversy. Mr. and Mrs. Reitsma were positive as to what the chest contained, and Mrs. Reitsma stated where and the approximate date when each article was purchased.
The defendant offered no evidence showing that she was without fault, and advanced no explanation whatever as to what became of Mrs. Reitsmas' property.
The law of this state is to the effect that where the bailor shows the loss by proof of delivery to the bailee, and by proving that bailee has not returned the articles stored, the bailor has successfully raised the presumption that the failure to deliver has resulted from negligence of the bailee, and there is then shifted to the bailee the duty of proceeding with the evidence and of proving that he was free from negligence.
In Colgin v. Security Storage & Van Co., La.App., 15 So.2d 664, 666, we quoted the following language used by the Supreme Court in Alex W. Rothschild & Co., Inc., v. Lynch, 157 La. 849, 103 So. 188: "The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property. Civ.Code art. 2937. And, where he is unable to explain the disappearance of the deposit or to show his own freedom from negligence, he is liable. Nicholls v. Roland, 11 Mart., O.S., 190; Short v. Lapeyreuse, 24 La.Ann. 45."
The only serious question presented is whether defendant's liability is to be limited to $50.
Mrs. Reitsma received from the drayman only a receipt for "1 box." There is no evidence showing that defendant or any of her employees ever made any statement to Mr. or Mrs. Reitsma concerning the warehousemans' limited liability. According to an office employee, the warehouse receipt, which bears the date September 11, 1944, was mailed out from defendant's establishment on the same day the deposit was made. Mr. Reitsma is positive that he did not receive the receipt until after his wife had gone to New Jersey. It came enclosed with defendant's bill of September 30, 1944, and reached him about that date. Mrs. Reitsma did not see the warehouse receipt until November 4, 1944, when her husband showed it to her.
The decision in the case of Colgin v. Security Storage & Van Co., 208 La. 173, 23 So.2d 36, 160 A.L.R. 1107, appears to be full authority for adjudicating the issue under consideration. The facts are strikingly similar to those in the instant case. A cedar chest was delivered to defendant's warehouse through an independent drayman by an agent of plaintiff. The warehouse was notified by telphone that the chest was being delivered. The plaintiff's agent called at the warehouse later in the day to settle a bill for storage on other property belonging to plaintiff. Neither the drayman nor the agent was presented with a warehouse receipt, but on the same day that the cedar chest was received, a warehouse receipt was mailed to plaintiff's wife. When the chest was withdrawn from storage, more than a year later, certain articles were missing therefrom, and plaintiff instituted his action for their value. The case was appealed to this court, and we first concluded that the plaintiff was not bound by the clause in the warehouse receipt limiting the warehouseman's liability, La.App., 15 So.2d 664. On rehearing, we reversed our original decree and held that the clause was binding on the plaintiff, La.App., 17 So.2d 473. The matter was heard on review by the Supreme *219 Court, and it was held that the defendant could not avail itself of the special provisions of the warehouse receipt. The Court said [208 La. 173, 23 So.2d 38]:
"* * * However, as to terms and conditions * * * which redound to the benefit of the warehouseman, the depositor could not be charged with notice of such unless they are brought to his attention or he assents to them as a part of the contract between himself and the warehouseman. * * *
"A contract is implied by law when the deposit is received. To modify the contract implied by law, the special provisions must be either a part of the original contract or contained in an amendatory contract. In order for the special provisions to be effective, the assent of both parties is necessary. One of the parties, without the consent of the other, cannot modify the implied contract. There must be a meeting of the minds of the parties to effectuate the special contract.
"The limiting clause was not brought to the attention of the depositor, and we are at a loss to see how he could be charged with consenting to a limitation of defendant's liability.
* * * * * *
"The Court of Appeal in its final decision in this case was of the opinion that at the time the deposit was made the parties contemplated the issuance of the receipt as a necessary part of the contract.
"There is nothing in the evidence to show that the parties intended, at the time the deposit was made, that there would be any limitation placed on the liability of the defendant."
Defendant's counsel insists that the facts in the Colgin case are distinguishable from those under consideration, in that in the instant case the contract was a continuing one from month to month, and he argues that whereas Mrs. Reitsma saw the warehouse receipt on November 4, 1944, prior to the beginning of the third month, she, not having repudiated it, must be held to have acquiesced in its terms. The printed report of the Colgin case does not show whether there was a monthly storage charge, but it appears that more than a year elapsed, after the cedar chest was placed in the warehouse, before the loss was disclosed. But be that as it may, we are convinced that the holding in the Colgin case is controlling here. The property was stored for an indefinite period, and the rights and responsibilities of the parties implied by law, it seems to us, became fixed at the moment the chest was turned over to defendant's drayman, and the assent of both parties was necessary before the special provisions could become effective. We do not think, simply because the warehouse charges were payable monthly, that a new contract came into being each month the property remained with defendant, or that the bailee could alter the terms of the original contract each time a month's storage charge became due.
For the above reasons, the judgment appealed from is affirmed.
Affirmed.