49 So.2d 774 (1951)
MATTHEWS
v.
GAUBLER et al.
No. 19391.
Court of Appeal of Louisiana, Orleans.
January 2, 1951.
*775 John H. Hammel, Jr., New Orleans, for defendants and appellants.
Jacob J. Amato, Gretna, for plaintiff and appellee.
McBRIDE, Judge.
By contract dated November 8, 1945, Morris Matthews, the plaintiff, agreed to purchase from Mr. and Mrs. A. J. Gaubler, and they agreed to sell to him, the property known as 2825 Arts Street, New Orleans, for the price and sum of $3000. It was stated in the contract that the property was not under lease, but was occupied by the owners, and that "possession to be given at act of sale." It was stipulated that the sale would be passed before the purchaser's notary public "on or prior to Dec. 15, 1945." By a subsequent mutual verbal understanding, the parties postponed the time for passing the act of sale to January 2, 1946.
Matthews, to finance the purchase of the property, arranged for a loan from a local homestead, and it was understood that the act of sale was to be passed before Mr. Allain C. Andry, Jr., the notary public for the homestead.
On January 2, 1946, about noon, all of the parties gathered in Mr. Andry's office. After all of the necessary documents were signed by Matthews and Mr. and Mrs. Gaubler, that is to say, the act transferring the property to the homestead, the act of resale from the homestead to the purchaser, and the purchaser's mortgage note evidencing the loan, and after Matthews had written his check for the portion of the purchase price which he would have to advance, he asked the Gaublers for the keys to the premises. They stated that they did not have the keys with them, and informed Matthews that their child was ill, and that they could not move from the premises that day. Matthews then peremptorily refused to go through with the sale. There is some testimony by the Gaublers that they told *776 Matthews the keys could be delivered later that afternoon, but the plaintiff denies this.
Be that as it may, when Matthews insisted upon delivery of the keys and immediate possession, Mr. and Mrs. Gaubler admitted that they were not in position to turn over the keys to him at that particular moment, and after a discussion of the matter, they finally stated that they would move out of the house by eight o'clock the following morning, and would deliver the keys to Matthews then. He refused to accede to this delay.
In connection with his agreement to purchase the property, Matthews deposited with the realtors who negotiated the transaction the sum of $300, and the agreement states that: "This deposit is to be noninterest bearing and may be placed in any bank of your selection in the City of New Orleans without responsibility on your part in case of failure or suspension of such bank pending settlement. In the event that purchaser fails to comply with this agreement within the time specified, the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing purchaser in default, time being the essence of this contract; or the vendor may demand specific performance. In the event that the deposit is forfeited, the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against purchaser for the recovery of the amount of the commission. In the event that the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance."
By this suit, Matthews, who alleges that the Gaublers are in default, seeks to recover from them double the amount of the deposit, or $600 plus $250 for his attorney's fee. After their exceptions of vagueness and no right or cause of action had been overruled, defendants answered the suit, denying that they were in default, and averring that plaintiff himself was in default, and was not entitled to the relief which he sought. The trial in the lower court resulted in a judgment in favor of plaintiff for $600, plus a $150 attorney's fee, from which the defendants have appealed.
It might be stated at this point that the stipulation "possession to be given at act of sale" was incorporated in the agreement at the insistence of Matthews. The evidence also shows that on January 2, 1946, before proceeding to the notary's office, Matthews visited the property to examine it, and upon observing that the furniture and furnishings of the Gaublers were still in the house, he became apprehensive about getting possession at the time of the passage of the sale.
The basis of the exception of no right or cause of action, which was reurged before us, is that the plaintiff is not entitled to a return of double the deposit, as he should have accepted title, paid the purchase price, and then, in the event that the keys were not delivered to him by eight o'clock the following morning, he should have brought an action for damages against defendants. We perceive no merit whatever in the exception.
Counsel for appellants first argues that a decision of the case hinges on the meaning of the phrase, "possession to be given at act of sale." His contention is that the stipulation does not mean that a simultaneous delivery of the keys would be made at the signing of the formal act of sale, but that the parties, by employing such language, only intended that there would be a delivery of physical possession of the property within a reasonable time after the act was passed. Says counsel in his brief: "Now, what are the respective rights of a vendor and a vendee? There can be no question that the vendee is entitled to obtain possession of the premises he purchases when he pays the consideration thereof, but certainly he cannot be unreasonable in his demand. What assurance does the vendor have that the vendee will have sufficient funds to complete the sale or that he will even appear at the time and place fixed for the passage of the act of sale? Must the vendor vacate his house in the absence of such assurance, or should he have a reasonable time to effect compliance with his contract when he is assured *777 that the vendee has complied with his obligations? We submit that when Defendants appeared in Mr. Andry's office on January 2, 1946 and agreed to deliver the keys to Plaintiff not later than eight o'clock on the morning of January 3, 1946, they had effected full compliance with the contract of sale."
Our opinion is that the words, "possession to be given at act of sale," which, it must be remembered, were incorporated in the agreement at the instance of Matthews, were intended to mean, and could only mean, that at the very moment of the execution of the formal act of sale, physical and corporeal possession of the property would be forthcoming to the purchaser.
Counsel states that there are no Louisiana authorities interpreting the clause, or defining the meaning of the words in question. Our research, however, discloses the case of Warfield v. Cotton, 149 La. 1004, 90 So. 374, which we think is analogous to the question posed in the instant case. The Supreme Court held that the stipulation, "possession to be given immediately," as used in an agreement to purchase, entitled the defendant "by its express, explicit terms, to immediate possession," and that when defendant took possession, he was but exercising his legal right.
It is also argued on behalf of appellants that there are extenuating circumstances in the case, which would render inhuman indeed a holding that they should have conveyed their sick child from the house before going to the notary's office, and that, because of the illness of their child, they had the natural right to retain possession of the property for the short period of time until eight o'clock of the following morning.
Again, we cannot agree with counsel. We are not at liberty to disregard the explicit terms of the agreement, which bound the vendors to deliver corporeal possession of the property to the purchaser at the very moment of the passing of the act of sale, merely because it was inconvenient for them to make delivery, or because the making of delivery would have worked a hardship upon them. Legal agreements have the effect of law upon the parties, and courts are bound to give legal effect to all such contracts according to the true intent of all the parties, and that intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences. Art. 1945, R.C.C.
Under the provisions of art. 2475, R.C.C., the seller is bound to two principal obligations, that of delivering the thing, and that of warranting the thing which he sells. In Derbonne v. Burton, La.App., 189 So. 473, 474, it was said that "the obligation of delivery is the primary obligation to be fulfilled."
What is to be considered a delivery of possession is determined by the rules of law, applicable to the situation and nature of the property. Art. 1924, R.C.C. The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer, and the law considers the tradition or delivery of immovables, as always accompanying the public act, which transfers the property. Arts. 2477, 2479, R. C.C.
According to art. 496, R.C.C., the ownership and the possession of a thing are entirely distinct.
Art. 3434, R.C.C. provides in part: "Since the use of ownership is to have a thing in order to enjoy it and to dispose of it, and that it is only by possession that one can exercise this right, possession is therefore naturally linked to the ownership."
In Ellis v. Prevost, 19 La. 251, the Supreme Court said: "* * * Possession is acquired by the actual and corporal detention of the property; this is the natural possession, or possession in fact; * * *"
The penalty for the failure of a vendor to make delivery is stipulated for in R.C.C. arts. 2485 and 2486, respectively, as follows:
"If the seller fails to make the delivery at the time agreed on between the parties, the buyer will be at liberty to demand, either a canceling of the sale, or to be put into possession, if the delay is occasioned only by the deed of the seller."
*778 "In all cases, the seller is liable to damages, if there result any detriment to the buyer, occasioned by the non-delivery at the time agreed on."
In Franton v. Rusca, 187 La. 578, 175 So. 66, it was held that a petition by a purchaser under a warranty deed, for damages for the vendor's failure to deliver possession of part of a tract of land which was in possession of another, stated a cause of action under Rev.Civ.Code, arts. 2475, 2486.
Matthews was to have immediate physical and corporeal possession at and upon the passage of the formal act of sale, both under the express stipulations of the agreement, and by the plain import of the law. By failing to make delivery of possession at the time agreed upon between the parties, the vendors actively breached their obligation, and Matthews, the purchaser, was within his rights in receding from the agreement and refusing to pay for the property. Under the terms of the agreement, the law between the parties, which provides that in the event the vendors do not comply with their agreement the purchaser shall have the right either to demand return of double the deposit or specific performance, Matthews is entitled to maintain the present action.
On, and several times after January 5, 1946, appellants' counsel addressed letters to Matthews, offering to deliver the keys to him and demanding that he comply with his contract and purchase the property, but the plaintiff did not respond to the letters, and he denies that he received some of them. Counsel contends that when Matthews refused the Gaublers' offer to surrender the keys and pass title, he was in default, and cannot now maintain the present action, he having no further rights under the contract.
The best answer to this contention is the recent case of DiCristina v. Weiser, 215 La. 1115, 42 So.2d 868, wherein the Supreme Court held that one who himself is in default on a contract for the sale and purchase of real property, cannot subsequently put the other party in default, under the provisions of art. 1913, R.C.C.
The judgment appealed from allowed plaintiff's attorney a fee of $150. The only stipulation regarding attorney's fees to be found in the agreement reads thusly:
"If this offer is accepted vendor agrees to pay the Agents commission of 5% on purchase price amounting to $150.00 commission to be divided equally between Eason-Jeansonne & me.
"Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay the Agents Commission and all fees and costs incurred in enforcing collection and damages." (Italics ours.)
Nowhere in the agreement does it appear that the purchaser, in demanding a return of double the deposit, is entitled to collect in addition thereto a fee for his attorney, and the allowance of the attorney's fee in the judgment appealed from is erroneous. The above quoted language specifically refers only to the fees and costs incurred in enforcing collection of the agent's commission for making the sale, from the party to the agreement who fails to comply with its terms.
The ordinary rule is that attorney's fees are not recoverable by a successful litigant in a civil action in the absence of statute or contract. Smith v. Atkins, 218 La. 1, 48 So.2d 101; Rhodes v. Collier, 215 La. 754, 41 So.2d 669; Winkler v. Ascension Bank & Trust Co., 182 La. 69, 161 So. 23; Meraux & Nunez, Inc., v. Gaidry, 171 La. 852, 132 So. 401; Grapico Bottling Works v. Liquid Carbonic Co., 163 La. 1057, 113 So. 454.
For the reasons assigned, it is ordered, adjudged, and decreed that the amount of the judgment appealed from be reduced from $750 to the sum of $600, and as thus amended, and in all other respects, it is affirmed. Costs of this appeal are to be borne by plaintiff-appellee.
Amended and affirmed.
REGAN, J., dissents.