HAMITER, Justice.
 

 Leonard LaHitte, who conducts a business in the City of New Orleans under the name of L & L Auto Sales and is the defendant herein, prosecutes this appeal from a judgment that rescinded his sale to plaintiff, Ovide J. Chauvin, of a 1953 Studebaker automobile, condemned him to refund the paid purchase price of $2,850, and awarded plaintiff attorney’s fees in the additional sum of $400.
 

 As is shown by his assigned written reasons the district judge found as a fact that the defendant, in making the sale to plaintiff, fraudulently represented the automobile as being “brand new” when it was in truth a used car to his knowledge.
 

 The evidence contained in the record, which we have carefully studied and weighed, convincingly supports the mentioned finding. Contradictory of the sworn assertions of the defendant, which are that he never held himself out to the public as a new car dealer and that in making the sale in question on September 8, 1953 he merely represented the Studebaker automobile to be “practically new” and as having been owned by his father in law, is the testimony of' plaintiff, his wife, his daughter, and his son in law, all of whom were present when the negotiations were conducted. They testified that at such time plaintiff, who was desirous of acquir
 
 *97
 
 ing a new vehicle and was contracting to pay the regular “new car” list price, received assurance from the defendant that the automobile being purchased was “brand new” and that a service policy, which usually accompanies such a purchase, would be mailed to him immediately; but that some weeks later he learned that his acquisition was of a “used” machine, it having been sold to another on March 21, 1953 (almost six months prior to his purchase) by a Studebaker dealer in Memphis, Tennessee.
 

 Moreover, the testimony of plaintiff and his witnesses, as to the intentional misrepresentation perpetrated by the defendant, is corroborated by these proven circumstances :
 

 (a) The business cards circulated by defendant contained the words
 
 “New
 
 and Used Cars”. This contradicts his assertion that he did not hold himself out to the public as a “new” car dealer.
 

 (b) He maintained a sign at his premises reading: “Like New and Used Cars”. The word “Like” was exceedingly small in proportion to the other words and, hence, indicated the existence of an intent to mislead.
 

 (c) The total consideration for the sale of the second hand vehicle to plaintiff approximately equaled the regular list price for a new one of the same make, model and type.
 

 (d) The application for a certificate of title that was prepared by defendant, or under his direction, listed the car as being new.
 

 (e) A photostatic copy of the bill of sale that accompanied such application shows the defendant’s signature in connection with and as approving the statement: “This car is new and has never been licensed or titled in this or any other State.”
 

 (f) The service policy was not mailed as promised. Plaintiff’s wife secured it only after visiting defendant’s premises some eleven days following the purchase and by making demand therefor. But even then it was valueless, and Studebaker service stations later refused to honor it, because the provisions thereof provided service for a maximum period of ninety days after delivery to the original purchaser and the car had been delivered originally on “3-21-53” to Joseph Bruno (the purchaser named in the policy) by a Memphis, Tennessee, dealer. Too, before plaintiff received the service contract the delivery date originally shown thereon had been changed to read “9-21-53”.
 

 Also, we agree with the trial court that inapplicable to this cause is the doctrine, recognized in our jurisprudence and invoked by this defendant, that a suit to rescind a sale must fail when the purchaser has used the property to such an extent that it cannot be returned to the seller in substantially the same condition as when sold.
 

 It appears that plaintiff and his wife did not suspect any irregularity in the
 
 *99
 
 •sale until September 19, 1953 (eleven days after its consummation) when they obtained the service policy and noticed therein that a prior purchaser was one Joseph Bruno. Even then, however, they were assured by defendant (or his representative) that such person was his father in law in whose name he always acquired new cars from the manufacturer. About this time also the purchased automobile became difficult to start and it was taken to a repair place suggested by defendant. Some days thereafter, while the starting difficulty was continuing, plaintiff’s wife visited a regular Studebaker service station and tendered the policy; but the honoring of it was refused.
 

 Approximately a month after the sale (on or about October 8, 1953), when defendant telephoned to plaintiff’s wife requesting payment of $100 then due under the purchase arrangement, the latter told him of the continuing trouble being experienced with the automobile and further stated: “I will trade you back. I would like my car back and you can take yours.” Without agreeing to her proposal, he replied that he was also having trouble with the Nash car which had been accepted on the purchase price.
 

 Finally, on November 19, 1953, plaintiff’s attorney addressed a letter to defendant demanding, in effect, a rescission of the sale and a return of the consideration given therefor. The demand was ignored, and this suit followed fifteen days later.
 

 Under the above circumstances it cannot be correctly said that plaintiff delayed unreasonably, in attempting to obtain a settlement of his claim, to the extent of effecting a bar of this suit.
 

 But in our opinion there is error in that part of the judgment which awards to plaintiff attorney’s fees of $400. On numerous occasions this court has said that ordinarily attorney’s fees are not assessable as an item of damages unless provided for by law or by contract. The clear import of the language of the opinions is that
 
 no
 
 award of them can be made if
 
 not
 
 so particularly authorized. Winkler v. Ascension Bank & Trust Co., 182 La. 69, 161 So. 23, Efner v. Ketteringham, 217 La. 719, 47 So.2d 331, Brantley v. Tugwell, 223 La. 763, 66 So.2d 800, and Griffin v. Bank of Abbeville & Trust Co., 228 La. 857, 84 So.2d 437. See also (as to the result reached) Ecuyer v. Benevolent Association of Elks, 152 La. 73, 92 So. 739 and Davis-Wood Lumber Co. v. Canulette Shipbuilding Co., Inc., 164 La. 301, 113 So. 855. No statutory or codal provision specifically authorizing an award of attorney’s fees in a case such as this has been called to our attention, and the sales contract under consideration does not provide for it.
 

 Plaintiff’s counsel cite in support of the claim, and the district judge evidently based his award on, Raney v. Gillen, La.App., 31 So.2d 495 and Morgan v. Patkin, La.App., 47 So.2d 91, both of which were decisions of Courts of Appeal. However,
 
 *101
 
 the authorities relied on in the Morgan case were disapproved by this court in Rhodes v. Collier, 215 La. 754, 41 So.2d 669, which was followed in Brantley v. Tugwell, supra, and also in Efner v. Ketteringham, supra. Moreover, the holding in the Raney and Morgan cases, assuming for the sake of argument that they conflict with our conclusion herein, are not binding on this court.
 

 For the reasons assigned the judgment of the district court is amended by reducing the amount thereof from $3,250 to $2,-850, and as amended it is affirmed. Appellee shall pay the costs of this appeal.