REGAN, Judge.
Plaintiff, Ashton E. Williams, instituted this suit for specific performance to compel the defendant, Cosimo Terese, to convey to plaintiff his undivided one-half interest in a parcel of ground, designated as Lot 1 in Square 981 of the Third District of the City of New Orleans and his usu-fruct of the other half, asserting that defendant had misrepresented himself as owner of the whole and in that capacity entered into an agreement to sell the property, which was subsequently breached when defendant’s daughter, Mrs. Theresa San-sone, the naked owner of an undivided one-half interest, refused to join in the act of sale to transfer this lot to plaintiff. Plaintiff alternatively prayed for the return of an amount equal to his deposit, costs, fees and certain damages which he asserted he incurred by virtue of being unable to acquire this property.
Defendant pleaded the exceptions of vagueness and of no right or cause of action and then answered, reserving his rights under the exceptions, and denied misrepresenting himself as the owner of the whole, asserting that from the inception of the agreement, it was understood that his daughter’s consent must be procured in order to convey the property to the plaintiff.
From a judgment in favor of the plaintiff for $417,[1] plus attorney’s fees in the amount of $125, defendant has prosecuted this appeal. The plaintiff answered the appeal and re-urged specific performance and, alternatively, that the court increase both damages and attorney’s fees.
The record reveals . that plaintiff, the proprietor of a supermarket, was interested in acquiring the property above described to expand or to facilitate the operation of his business. He contacted Joseph T. Seidel, a salesman for C. J. Tessier, a local realtor, who advised him that he could discover the identity of the owner of the property by consulting the tax records of . the City of New Orleans. Seidel thereby learned that the defendant was *82 ostensibly the owner. Immediately thereafter, the salesman visited the defendant and inquired whether he would agree to sell this lot. The defendant stated he would accept $2,500 therefor, and the plaintiff, through Seidel, orally agreed thereto.
On October 11,1956, plaintiff and defendant signed an agreement to purchase and sell, using the standard form[2] of the Real Estate Board of New Orleans, Inc. At that time, although this fact is disputed, defendant held himself out as the sole owner of the property which was to be transferred in conformity with the above agreement.
After the plaintiff’s attorney began examining the title to the property, it was learned that it had been a community asset of defendant and his deceased wife. Prior to signing the agreement, her succession had been opened and a judgment of possession rendered therein, recognizing defendant as owner of an undivided one^ half interest in this property and his daughter, Mrs. Theresa Sansone, as owner of the other undivided one-half interest, subject to the usufruct of her father.
On November 30, 1956,[3] an appointment was arranged for the plaintiff, the defendant and his daughter to appear at the office of purchaser’s notary in order to transfer title; however, the defendant and his daughter failed to keep the appointment.
Thereafter, Seidel contacted Mrs. San-sone, requesting that she appear at another time to convey her interest in the property, whereupon she advised him that she had no intention of selling it.
Both defendant and his daughter insisted that she had knowledge of the offer to purchase when it was first tendered. Defendant further asserted that he advised Seidel of his daughter’s ownership when he signed the offer and cautioned him that the transfer was contingent upon his daughter’s assent thereto.
In an attempt to establish damages incurred as the result of the agreement’s abrogation, plaintiff testified that he had planned to use this lot, located across the street from his super market, a business, which he asserted was grossing $200,000 per year, as a parking lot, and further to prevent the erection of another competing grocery in the same neighborhood.
No useful purpose would be served by indulging in a protracted discussion of the testimony adduced herein. Suffice it to say that predicated on the foregoing testimony and the “Agreement to Purchase or Sell” the trial court in its written reasons for judgment found as a fact that the defendant represented himself to be the exclusive owner of the property when he signed the agreement; that the plaintiff was not entitled to specific performance since the defendant only possessed an undivided one-half interest in the property; that the damages incurred by plaintiff as a result of the abrogation of the agreement amounted to $250, representing a sum equal to the amount of the deposit to be paid as a penalty by the defendant[4]; “$15 cost of survey; $65, notarial fees; $57 for cost of certificates; $30 for title guarantee” ; and $125 as attorney’s fees. With respect to other damages the lower court was of the opinion that plaintiff failed to prove these with that certainty required by law.
Our examination of the record reveals that the foregoing conclusions of the trial judge are fully supported by the agree *83 ment, the jurisprudence interpretative thereof, and the evidence inscribed therein.
 In this case the parties stipulated by their agreement, upon which this litigation is predicated, that: “In the event the seller does not comply with this agreement within the time specified, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option.[5]
* * * * ❖ *
“Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated and agrees to pay * * * all fees and costs incurred in enforcing collection and damages.”
Thus it may be seen that the parties did not intend the deposit as earnest money.[6] It was not given for the purpose of securing to the parties the privilege of withdrawing from the contract for neither was free to exercise such a prerogative. Both specifically reserved to themselves the right to demand specific performance at their option. The parties, therefore, contracted in clear and explicit language which led to no absurd consequences and as there is not the remotest suggestion that it is contrary to good morals or public policy, it is the law between them and the court is bound to give legal effect thereto.[7] Consequently, inasmuch as the defendant is unable to specifically comply with the agreement since he only owns an undivided one-half interest in the property,[8] plaintiff was entitled to the return of the $250 deposited by him, which, as we have heretofore related, was returned to him prior to the institution of this suit, plus an equal amount as stipulated damages or as a penalty.[9]
The lower court awarded plaintiff attorney’s fees of $125. He has answered the appeal a*id asked that these fees be increased in view of the additional legal work necessitated by virtue of the appeal. *84 We are of the opinion that the attorney’s fees should he increased from the sum of $125 to the sum of $250.
For the reasons assigned, the judgment is amended so as to increase the attorney’s fees from $125 to the sum of $250, and as thus amended, the judgment in all other respects is affirmed.
Amended and affirmed.

. The breakdown-of this figure is as follows: $250 damages provided for in the agreement of purchase; $30 for title guarantee; $137 expended in investigating title and preparing act of sale.

. Form ATP-OS No. 2, Revised and approved October 1954.

. On November 27, 1956, defendant was formally notified by registered - mail to be present in the office of plaintiff’s notary on November 30, 1956 at 1 p. m. for, passing of the act of sale. When defendant failed to appear, he was placed in formal default.

.The record reflects that the deposit of $250 had been returned by the defendant to the plaintiff prior to the institution of this suit.

. A reciprocal right was reserved by the seller: “In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.”

. See the excellent article by Dr. Paul M. Hebert, entitled “The Function of Earnest Money in the Civil Law of Sales”, 11 Loyola Law Journal 121.

. LSA-C.C. Art. 1945 — “Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
"First- — That no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
“Second — That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
"Third — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
“Fourth — That it is the common intent of the parties — that is, the intention of all — that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.”

. LSA-C.C. Art. 1926 provides: “On the breach of any obligation to do, or not to do, the obligee is entitled either to-damages, or, in eases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.”
LSA-C.C. Art. 1927 provides: “In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts.”

. See Ducuy v. Falgoust, 1955, 228 La. 533, 83 So.2d 118, and cases therein discussed.