291 So.2d 520 (1974)
Ben J. KEMPFF and Mrs. Ben J. Kempff, his wife
v.
John MORGAN and Mary Morgan, his wife.
No. 5505.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1974.
*521 Joseph S. Russo, Jefferson, for plaintiffs-appellees.
Joseph K. Clay, Jefferson, for defendants-appellants.
Before LEMMON, BOUTALL and SCHOTT, JJ.
LEMMON, Judge.
Plaintiffs-buyers and defendants-sellers executed a written agreement to buy and sell certain immovable property. The buyers *522 refused to complete the sale on the grounds that the sellers' title was not merchantable. The sellers then rejected the buyers' demand for the return of the deposit, and this litigation ensued.
After a trial on the merits, the trial court found the title unmerchantable and rendered judgment ordering the defendants to return the deposit and to reimburse the buyers their attorney's fees and their expenses incurred in preparation for the sale. The sellers appealed, and the buyers answered the appeal, seeking double the deposit as earnest money.
Primary issues on appeal involve the merchantability of the title and the extent of the seller's liability under this particular contract when, without fraud or bad faith, they failed to comply with the agreement solely because they could not deliver merchantable title.

MERCHANTABLE TITLE
The buyers agreed to purchase a "House Lot & all Improvements thereon On grounds measuring about approx. 50 ×120 or as per title." (Italicized words were handwritten.) The agreement was conditioned upon the buyers obtaining a homestead loan in an unspecified amount.
The buyers testified that they had inspected the property in response to a newspaper advertisement; that the rear yard, enclosed by a wooden fence, contained a swimming pool, a wooden patio and two dressing rooms which had been added to a garage; and that the sellers represented they owned all of the grounds enclosed by the fence.
After the agreement was signed, a homestead issued a commitment to lend the buyers the amount of money they requested. However, a survey required by the homestead's title examiner subsequently revealed the following:
1. There was a five foot servitude inside of and adjacent and parallel to the rear property line.
2. The dressing rooms had been built on the servitude.
3. The wooden fence extended an additional 10.7 feet beyond the rear property line.
4. The wooden patio had been constructed entirely upon the 10.7 feet to which sellers had no title.
5. The roof of the dressing rooms overhung the property line by 0.9 feet.
6. The improvements were constructed in violation of several portions of the Jefferson Parish Zoning Ordinances.
The homestead then reappraised the property without consideration of the rear structures. When the lower appraisal was still sufficient to justify the loan in the amount requested, the homestead reaffirmed its commitment to lend the full amount, but asked the buyers to take cognizance of the encroachments and to hold the homestead harmless.
The buyers testified that they didn't want to become involved in the expense of moving fences and improvements or in possible litigation over moving them; that they therefore asked the sellers to move the fence and improvements; and that when the sellers maintained they owned all the property, they (buyers) refused to complete the sale and demanded a return of the deposit.
On the other hand, the sellers insisted they informed the buyers at the first inspection that the fence extended beyond the rear property line. They claimed they had moved their original fence because the area between their original fence and the fence of their neighbors to the rear (an area admittedly owned by those neighbors) had been used for dumping trash.
A homestead offical testified that the buyers were not aware of any problems until the homestead notified them just before the act of sale was scheduled.
The trial judge found the sellers had not informed the purchasers of the encroachment. *523 After reviewing the record, we find no manifest error in this factual finding.
We also conclude that the sellers' title to the property contemplated in the agreement to purchase was not merchantable. While the agreement specified dimensions of "50 × 120 or as per entitle", all parties contemplated the sale of all land and improvements within the fenced area. The sellers did not own part of this land, and another part (containing improvements) was subject to a servitude. The sellers offered to saw off the encroaching overhang, but made no offer to move the improvements. More than a year after the date scheduled for passing the sale, the sellers obtained a release of the servitude.
As to the zoning ordinance violations, the sellers contended enforcement was barred by prescription. Even so, the fact prescription has run does not preclude litigation against the buyers, but would only avail them of a possible defense to be raised at their expense.
The prospective buyer in an agreement to buy and sell cannot be called upon to accept a title which reasonably suggests future litigation. Marsh v. Lorimer, 164 La. 175, 113 So. 808 (1927); Young v. Stevens, 252 La. 69, 209 So.2d 25 (1967). The title problems in this case undoubtedly suggest litigation. The buyers could not be assured of peaceful possession of the land and improvements contemplated in the agreement to sell. Furthermore, they could not be compelled to wait an unreasonable length of time, while the sellers attempted to correct those problems which were correctable. Under these circumstances we conclude that the buyers were justified in refusing to take title to the property because the title was not merchantable.

EXTENT OF SELLERS' LIABILITY
The sellers contend, on several bases, that even if their title was not merchantable, they were only liable for the return of the deposit.
First, the sellers argue that no contractual penalty or damages can be awarded because no contract ever came into existence, since the price and the thing were not certain. We disagree. The sellers intended to sell and the buyers intended to purchase everything within the fenced enclosure. The issue in this case is not whether or not there was certainty as to the thing to be sold, but whether or not the sellers owned the thing. We likewise find no merit in the argument that the price was not certain because the amount of the cash down payment and the amount to be financed were not specified. The contract specified the overall sale price, which is the essential element for the validity of the contract.
The sellers next argue that the contract contained a condition which rendered the agreement null and void if the loan should be unobtainable. The buyers did in fact secure a loan in an adequate amount, fulfilling the condition. The buyers refused to complete the sale solely because the title was not merchantable.
The sellers' principal argument is that the agreement to purchase specifically limited their liability in the case of an unmerchantable title to the return of the buyers' deposit. In refuting this argument, the buyers contend the deposit constituted earnest money, as noted on their check, and that they are therefore entitled to collect a penalty in a sum equal to the amount of the deposit.
The pertinent provisions of the agreement to purchase were lines 29 through 36, which read as follows:
Lines 29-31: "The seller shall deliver to purchaser a merchantable title. Should the purchaser refuse to take the title because same is not merchantable, or for any defects therein, then in that event the seller is only liable for the return of the deposit made by the purchaser, anything to the contrary notwithstanding."
Lines 32-33: "In the event the purchaser fails to comply with this agreement *524 within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited without formality beyond tender of title to purchaser; or the seller may demand specific performance."
Lines 34-36: "In the event the seller does not comply with this agreement within the time specified, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance at his option."
In Ducuy v. Falgoust, 228 La. 533, 83 So. 2d 118 (1955) the Supreme Court considered an agreement to purchase which contained the following language:
"In the event * * * the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance."
The court extensively discussed the history of earnest money and concluded that the parties did not intend the deposit as earnest, since the deposit did not secure the privilege of withdrawing from the sale. Inasmuch as the seller could not tender a marketable title (although the seller desired to comply with his agreement), the court enforced the exact wording of the agreement and awarded the buyer the return of his deposit plus an equal amount as stipulated damages.
In the present case, however, the agreement contained an additional provision (lines 29-31) not present in the Ducuy case, namely, that when the buyer refuses to complete the sale because the title is not merchantable, the seller's liability is limited to the return of the deposit.
Prior to the Ducuy case, a number of decisions [notably Johnson v. Johnson, 213 La. 1092, 36 So.2d 396 (1948)] had refused to award stipulated damages unless the seller had acted in bad faith or had refused to comply with the contract. When the seller was willing and ready to convey title, but was unable to do so because his title was suggestive of litigation, the penalty was not assessed.
In the Ducuy case two members of the Supreme Court dissented, labeling the harsh result as unjust to good faith sellers unaware of title defects and not within the intent of those who prepared the printed form contract. The provision in the form contract used in the present case is similar to those appearing in form contracts in other recent cases and apparently was designed to mitigate the harshness of the Ducuy result with respect to good faith sellers.
We therefore view lines 29-31 in the present contract as rendering the penalty in lines 34-36 inoperative under certain circumstances. We construe the two provisions, taken together, to mean that if the good faith seller cannot deliver a merchantable title, the buyer is not entitled to the penalty; but if the seller for any other reason fails to comply with the purchase agreement, the buyer can either demand the return of his deposit and the penalty or demand specific performance.
We therefore distinguish the Ducuy case on the basis of the additional provision in the contract in this case, limiting the sellers' liability in the one specific instance. Accordingly, we conclude that the sellers are not liable for the penalty, although the sellers are liable for the return of the deposit.
Finally, we consider the trial judge's award of attorney's fees and of the buyers' expenses incidental to the sale.[1] This award was apparently based on the *525 following provision in the agreement to sell:
Lines 42-43: "Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent's commission and all fees and costs incurred in enforcing collection and damages."
As to fees and costs incurred in enforcing collection, the Supreme Court in the Ducuy case awarded attorney's fees when the contract contained an almost identical provision.[2] Following the Ducuy case, we conclude that the provision in lines 42-43 entitles a buyer to attorney's fees and costs of collection (as well as actual damages), unless that provision is rendered inapplicable by the earlier contract provision limiting the seller's liability to the return of the purchase price in the case of an unmerchantable title.
We have already interpreted lines 29-31 as intended to prevent imposition of a harsh penalty upon a good faith seller who cannot deliver a merchantable title. We are now faced with the question as to whether lines 29-31 were also intended to relieve such a seller of any liability to pay actual damages.
When a good faith seller cannot deliver a merchantable title, the buyer equally in good faith has often expended sums for surveys, appraisals and similar preparations for the sale. To that extent the buyer is actually damaged when the sale is aborted through no fault of his own. Under these circumstances we believe that lines 29-31 should not be interpreted as preventing recovery by the buyer of his actual damages.[3]
C.C. art. 1934(1) provides that the debtor, not guilty of fraud or bad faith, is liable only for such damages as "may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract." We believe it is reasonable to suppose the parties in this case contemplated, if the title proved unmerchantable, that the sellers return the buyers to their original position but yet not be subject to a penalty.
In our opinion lines 29-31 (in the same section of the contract as the penalty provision) were intended to limit the seller's liability only insofar as the penalty would otherwise apply and were not intended to affect the seller's obligation (under another section of the contract) to pay actual damages and collection fees and costs.
We believe the pertinent provisions of the contract in the present case should be interpreted so as to make the buyers whole for all necessary expenses incurred, while *526 not penalizing the sellers to the full extent of the penalty. This interpretation attributes some meaning to all of the pertinent contractual provisions, gives effect to the apparent intention of the contracting parties, and achieves substantial justice. C.C. art. 1945.
The judgment is affirmed.
Affirmed.
SCHOTT, J., dissents in part and assigns reasons.
SCHOTT, Judge (dissenting in part).
I respectfully dissent from that part of the majority opinion which makes the sellers liable to the buyers for the sums they expended for surveys, title examination and appraisal.
LSA-C.C. art. 1934 provides inter alia that "when the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract."
At the time this contract was entered into the buyers and sellers contemplated that the buyers would take the risk that if the title was found to be not merchantable so that purchasers would refuse to take title sellers would be "only liable for the return of the deposit made by the purchaser, anything to the contrary notwithstanding." From this language it is clear that purchasers intended to determine if the title was merchantable at their own expense, and that such determination would necessarily involve fees for title examination and surveyors which in this case disclosed the encroachments and the title's resulting lack of merchantability.
These expenses were not damages to the purchasers but were expenses they expected to incur whether the title was merchantable or not. As a matter of fact, these expenses saved them from the greater loss or damage they would have incurred had they taken a title to property which was clearly unmerchantable.
The view taken by the majority ignores the unequivocal language of the contract which on the one hand provides:
"Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent's commission and all fees and costs incurred in enforcing collection and damages."
But which also provides:
"The seller shall deliver to purchaser a merchantable title. Should the purchaser refuse to take the title because same is not merchantable, or for any defects therein, then in that event the seller is only liable for the return of the deposit made by the purchaser, anything to the contrary notwithstanding."

It is patently shown that the first quoted provision is modified by the underscored language of the second quoted portion of the contract.
Additionally, I perceive an inconsistency in the majority opinion in that the "penalty" as used in the opinion to characterize double the deposit is nothing more than a provision for liquidated damages, the purpose of which is to provide a readily ascertainable figure as a substitute for damages which are difficult to compute and to prove. In the case of Dutreil v. Wohlert, 210 So.2d 511 (La.App. 4th Cir. 1968), this Court denied recovery for a title examination fee over and above double the deposit because liquidated damages were considered to be an amount in lieu of or as a substitute for actual damages such as the title examination fee. The same logic which led the majority to a denial of recovery for liquidated damages, which they call a "penalty", should have led them to a denial of recovery for actual damages.
As to the appraisers' fees, it was unnecessary for purchasers to incur this expense *527 before they determined whether sellers' title was merchantable. Since they conditioned their agreement on a determination that the title was merchantable in the first instance their incurring of this appraisers' fee was solely at their own risk and was not damage resulting from any act committed by sellers.
Accordingly, I would limit sellers liability to the return of the deposit and the attorney's fee incurred by purchasers in collecting that deposit.
NOTES
[1] These expenses included the title examination fee, the survey cost, and the cost of a credit report in connection with the homestead loan.
[2] See also Poche v. Ruiz, 239 La. 573, 119 So.2d 469 (1960), which implicitly approved an award of attorney's fees pursuant to the same contractual language, and Caplan v. Airport Properties, Inc., 231 La. 1071, 93 So.2d 661 (1957), which awarded attorney's fees to the buyer without quoting the contract.

We are aware that this court in Scurria v. Russo, 134 So.2d 679 (La.App. 4th Cir. 1961) ruled that this provision applied only to the agent and had no reference to the buyer or seller. See also Matthews v. Gaubler, 49 So. 2d 774 (La.App. 4th Cir. 1951); Centanni v. A. K. Roy, Inc., 258 So.2d 219 (La.App. 4th Cir. 1972); and Aubert v. Bourg, 259 So.2d 103 (La.App. 4th Cir. 1972). But contra, see Williams v. Terese, 120 So.2d 80 (La.App. 4th Cir. 1960). The court in Scurria apparently believed the Supreme Court did not state a holding on this issue in the Ducuy case, but simply awarded the fee because both the buyer and the seller in their pleadings demanded attorney's fees under this provision.
We do not believe the Supreme Court awarded attorney's fees under a contract provision considered to be inapplicable. We therefore follow the Ducuy case.
We further believe that the intent of the parties who drafted the standard form contract can be inferred from the fact that the standard form later used by the Real Estate Board of New Orleans clearly provided that attorney's fees and costs were recoverable by the agent or by either party. See the contract in Young v. Stevens, supra.
[3] See generally Smith, Recovery of Damages for Non-Delivery and Eviction in Louisiana A Comparison, XVII La.L.Rev. 253, 255 (1957).