**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-30948

RANDOLPH PENDARVIS; TAMMY PENDARVIS

Plaintiffs-Appellees-Cross-Appellants

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA

Defendant-Appellant-Cross-Appellee

Appeal from the United States District Court for the Middle District of
Louisiana
3:06-CV-772

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

The appellant, a mobile home insurer, challenges an award under the policy to the appellees for damage to appellees' mobile home following Hurricane Katrina. We reverse and render judgment in favor of the defendant.

I.

Plaintiffs Randolph and Tammy Pendarvis own a 1999 Crimson 28 x 70 mobile home in Prairieville, Louisiana. Defendant American Bankers Insurance Co. issued a mobilowners policy covering the plaintiffs' mobile home for losses

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

caused by, among other things, wind. The policy had a policy limit of $73,406, less the $500 deductible. In the event a covered loss occurred, the defendant was obligated to pay the plaintiffs the lowest of five amounts: (1) the difference between the actual cash value of the property immediately before the loss and its actual cash value after the loss; (2) the cost of repairing the damage; (3) the actual cash value of the property immediately preceding the loss; (4) the cost of replacing the property; or (5) the insurance policy limit.

In 2004, the plaintiffs discovered a leak in the roof of the mobile home and filed a claim with the defendant. The defendant inspected the roof and tendered $142.00 to the plaintiffs. Mr. Pendarvis repaired the leak in the roof. While repairing the leak, Mr. Pendarvis noticed problems with the shingles. The plaintiffs asked a contractor, Leroy Young, to look at the roof. Young determined that the shingles were improperly installed. The plaintiffs filed another claim with the defendant, claiming this was a covered loss. The defendant inspected the roof again and found the damage was not covered by the policy. Mr. Pendarvis again made his own repairs.

In August 2005, the mobile home was damaged by Hurricane Katrina. The district court found after a bench trial that following Hurricane Katrina:

> [p]laintiffs entered the home to find water coming through all of the windows and wet walls and carpet in almost every room. The utility room had leaves in the vent over the dryer; the kitchen had water running out of the cabinets, the microwave, and the stove; there was water dripping on the floor and standing on top of cabinets. The dining room had water damage inside the window sills; the fascia board was receding from the ceiling; the crown molding was coming off of the archway; the living room had water dripping from the ceiling; the walls and ceiling were bubbling; the master bedroom had water in the window sills; the master bathroom had water pouring through the ceiling; the vent was yellow from water; the track lights were popping. Plaintiffs did not have power for three days, and the electrical panel on the mobile home had to be changed

for fear that it would cause a fire. None of these conditions existed prior to Hurricane Katrina.

*Pendarvis v. Am. Bankers Ins. Co.*, 2008 U.S. Dist. LEXIS 42755, *6–7 (*hereinafter "Pendarvis (District)"*). The plaintiffs filed a claim with the defendant for the damage. An inspector for the defendant inspected the mobile home and determined that the damage was caused by Hurricane Katrina. The defendant issued a check to the plaintiffs in the amount of $4,704.83, which it calculated to be the total repair value. The plaintiffs did not negotiate the check for fear of impairing their rights under the policy.[**]

In March 2006, Young re-inspected the mobile home and concluded that the estimated cost of repairing the mobile home would be $71,500. In June 2006, the plaintiffs sent a detailed description of Young's estimate to the defendant. The defendant believed Young's estimate was too high and refused payment.

On August 28, 2006, the plaintiffs filed suit against the defendant seeking to recover policy benefits for the damage to the mobile home, as well as penalties and attorney's fees for bad faith. During the bench trial, the plaintiffs called four witnesses to testify, including Young. Because the plaintiffs did not timely furnish Young's expert report to the defendant, the district court refused to allow plaintiffs to call Young as an expert. However — over defendant's objection — the district court did allow Young to give his $71,500 repair estimate as a lay witness.

The district court found that the damage to the mobile home was caused by winds from Hurricane Katrina and covered under the plaintiffs' policy. The district court found that credible evidence was provided on only two of the recovery options under the policy: (1) the amount of insurance provided by the policy of $73,406, less the deductible of $500, and (2) the cost of repairing the

---

[**] The plaintiffs returned the $4,704.83 check to the defendant on August 14, 2006 stating that it was insufficient to make the necessary repairs to the mobile home.

mobile home of $71,500, as testified to by Young. The court found that because the cost of repairing the mobile home was less than the policy limit, and the defendant had not carried its burden of proving any other recovery option under the policy, the plaintiffs were entitled to $71,500 as the cost to repair the damage to their mobile home, less the $500 deductible. Finally, the district court held that the defendant was not in bad faith, and declined to award the plaintiffs penalties or attorney's fees. Both parties timely appealed the district court's judgment.

## II.

We review findings of fact for clear error and conclusions of law and mixed questions of law and fact *de novo*. *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009). We consider below the specific arguments raised by the parties.

## A.

The defendant argues first that the district court clearly erred in finding that the damage to plaintiffs' mobile home was caused by winds from Hurricane Katrina. The determination that the damage to the plaintiffs' mobile home was caused by winds is a factual determination that we review for clear error. While there was some damage to the mobile home prior to Hurricane Katrina, based on the record evidence — particularly the testimony by the plaintiffs and Young — we are satisfied that the district court did not commit clear error in determining that the damage to the mobile home was caused by the winds from Hurricane Katrina.

## B.

The defendant argues next that Young's estimate of the cost to repair the mobile home could only be properly admitted as an expert opinion and because the court refused to accept Young as an expert, the testimony was inadmissible.

A lay witness may offer opinion testimony, so long as the opinion is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c). In adopting the 2000 amendment, the Advisory Committee stated that "the distinction between lay and expert testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Notes of Advisory Committee on 2000 amendments (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). Numerous courts, including this court, have adopted this distinction. *See U.S. v. Caldwell*, 2009 U.S. App. LEXIS 23607, *22–23 (5th Cir. 2009); *U.S. v. Sosa*, 513 F.3d 194, 200 (5th Cir. 2008); *U.S. v. White*, 492 F.3d 380, 403 (6th Cir. 2007); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005); *U.S. v. Garcia*, 413, F.3d 201, 215–16 (2d Cir. 2005).

In this case, we find that Young's $71,500 estimate to repair the mobile home resulted from his knowledge as a specialist in the field of building construction and repairs. Young's repair costs estimate required, at a minimum, Young to forecast the amount, type, and costs of materials needed, as well as the amount of labor required to complete the long list of repairs. These forecasts are not common knowledge, "familiar in everyday life."[***] They require specialized knowledge of construction and repair work. Because specialized, technical knowledge was required, we find the district court abused its discretion in allowing Young's lay testimony.

---

[***] Young's testimony is distinguishable from the testimony the Eleventh Circuit allowed in *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221–23 (11th Cir. 2003). In *Tampa Bay*, the Eleventh Circuit allowed employees to submit lay testimony regarding repair costs for repairs already performed. In that scenario, the testimony required the employees to do little more than read an invoice. Reading an invoice does not require "scientific, technical, or other specialized knowledge." In the instant case, Young had to forecast repair costs for repairs that had yet to be made. Predicting future repair costs does require a specialized knowledge, and is therefore impermissible lay testimony.

C.

The defendant argues next that the district court erred in refusing to consider its evidence of replacement value as a recovery option. Following the bench trial, but before the issuance of the district court's opinion, the defendant submitted, without objection, two documents purporting to show the replacement costs of the mobile home. The first value came from the statement of an independent appraiser of Country Living Mobile Homes, Inc. The independent appraiser stated that the appraised value from May 2006 through August 2006 of a 1999 Crimson 28 x 70 mobile home in good condition was $38,433. The second value was from a National Automobile Dealers Association (N.A.D.A) appraisal guide. The appraisal guide stated that the total adjusted (retail) value of a 1999 Crimson 28 x 70 mobile home from May 2007 to August 2007 was $50,223.67.

The district court found that because these figures did not provide the replacement value immediately after the loss in August or September of 2005, they had no probative value. We need not decide whether this was error. The evidence of replacement value standing alone, without accompanying evidence of the cost of repair or some other quantification of extent of damage, is not sufficient to establish a recovery option under the policy. In other words, the replacement value represents a recovery option only if it is less than cost of repair or some other recovery option provided by the policy and no admissible evidence was produced that was sufficient to establish any recovery option under the policy.

D.

The determination that the defendant did not act in bad faith is a question of law that we review *de novo*. After reviewing the record, we agree with the

district court that the defendant did not act in bad faith. The plaintiffs do not demonstrate that the defendant either (1) misrepresented pertinent facts or policy provisions to the plaintiffs or (2) arbitrarily, capriciously, or without probable cause failed to pay the plaintiffs. *See* LA. REV. STAT. 22:1220(B). Therefore, the district court did not err in finding that the defendant did not act in bad faith.

## CONCLUSION

Plaintiffs produced the testimony of Young to establish the cost of repairing the mobile home and the district court accepted that testimony. Plaintiffs did not seek to produce evidence to establish any other recovery option. For reasons stated above, we find Young's lay testimony inadmissible. Consequently, the evidence is insufficient to support plaintiffs recovery under any of the policy options. Therefore, we REVERSE the district court's judgment and render judgment in favor of the defendant American Bankers Insurance Co.