**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 26, 2012

No. 10-31099

Lyle W. Cayce
Clerk

HOMESTEAD INSURANCE COMPANY,

Plaintiff–Appellant, Cross-Appellee

v.

GUARANTEE MUTUAL LIFE COMPANY,

Defendant–Appellee, Cross-Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:03-CV-3116

Before SMITH, PRADO, and ELROD, Circuit Judges:

EDWARD C. PRADO, Circuit Judge:[*]

This appeal follows the district court's judgment on remand from this court's decision in *Homestead Insurance Co. v. Guarantee Mutual Insurance Co.*, 287 F. App'x 306 (5th Cir. 2008). The plaintiff, Homestead Insurance Company ("Homestead"), appeals the district court's determination that the defendant, Guarantee Mutual Insurance Company ("Guarantee"), did not act in bad faith in violation of Louisiana Revised Statutes § 22:1973, or its predecessor, La. Rev.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31099

Stat. § 22:1220.[1]   Guarantee cross-appeals the district court's award of $50,527.16 in attorney's fees as damages to Homestead.   We AFFIRM the district court's ruling on bad faith and VACATE the award of attorney's fees.

## I.

In April 1994, Tonti Development Corporation ("Tonti") purchased an insurance package containing a worker's compensation policy provided by Guarantee and an employer's liability policy provided by Homestead.   In September 1994, one Tonti employee, Julie Green ("Green"), drove a golf cart into another Tonti employee, James Payne ("Payne"), who was consequently injured on the job.   Payne brought a worker's compensation claim against Tonti, which Guarantee defended on Tonti's behalf.   Payne also brought a tort action against Tonti and Green in Louisiana state court, alleging that Green intentionally drove the golf cart into him.   Payne's state court suit sought damages for mental and physical pain and suffering, past wage loss and future loss of earning capacity, and medical expenses.   Guarantee initially undertook Tonti's defense in Payne's state court suit, paying for the lawyer that filed an answer to Payne's petition.   Yet, Guarantee neglected to reserve any of its rights while undertaking Tonti's defense.

On April 9, 1997, Payne filed an amended petition.   He added Guarantee as a defendant and alleged that Guarantee was liable in tort for failure to provide timely medical treatment.   Like the original petition, the amended petition alleged an intentional tort.   On April 30, 1997, Guarantee, through its worker's compensation administrator, delivered a letter to Tonti stating that the amended complaint "alleges an action that is not covered by Guarantee Mutual's

---

[1] Effective January 2009, La. Rev. Stat. § 22:1220 was re-numbered La. Rev. Stat. § 22:1973.   The change in numbering did not affect the section's language or meaning.   For consistency of discussion, this opinion refers to § 22:1220, the section in use at the time of the underlying events.

coverage to you" and notifying Tonti that Guarantee would no longer represent Tonti in the state court proceeding. Tonti then contacted Homestead, which agreed to provide a defense for the state court suit but specifically reserved its rights. The reservation of rights provided that the complaint alleged an intentional tort but that, if the tort were proven, it would fall outside Tonti's policy coverage. Homestead then proceeded to pay for Tonti's lawyer.

The state litigation continued from May 1997 through 2005. After two jury trials and two appeals, the Louisiana Court of Appeal absolved Tonti and Homestead of liability for Green's tortious conduct, *Payne v. Tonti Realty Corp.*, 888 So. 2d 1090, 1097 (La. Ct. App. 2004), and Payne's claims against both were ultimately dismissed in their entirety.

Meanwhile, on November 3, 2003, Homestead filed this suit in federal court against Tonti and Guarantee, seeking a declaratory judgment that Payne's damages were not covered by Homestead's liability insurance policy issued to Tonti because the policy specifically excluded coverage for bodily injury intentionally caused by an employee. In May 2004, as the state court proceeding was wrapping up, Homestead amended its complaint, seeking a declaration that Guarantee was liable for all of Tonti's attorney's fees in defending Payne's state court suit. Thereafter, Tonti entered into a Stipulation of Judgment whereby Homestead dismissed its case against Tonti and in exchange Tonti assigned to Homestead its rights against Guarantee. Homestead and Tonti entered into an Assignment of Subrogation and Assignment of Rights, which provided: "The Assignment shall include any and all of Tonti's rights to pursue Guarantee for any penalties, interests and attorney's fees to which Tonti may be entitled as a result of Guarantee Mutual's failure to comply with its obligations under the Policy and other applicable law, statutes, or regulations."

In 2007, Homestead and Guarantee filed cross-motions for summary judgment on the issue of whether Guarantee was liable for Tonti's defense of

Payne's state court suit. Although the district court found that Guarantee had no obligation to defend Payne's tort suit against Tonti, on appeal, this court reversed. In an unpublished decision, we held that Guarantee had waived its right to assert a policy defense by defending Tonti for over twenty months without a reservation of rights. *Homestead,* 287 F. App'x at 308. We further held that the assignment was valid, and that Homestead was the proper party to assert Tonti's claims against Guarantee because Homestead was standing in the place of Tonti based on Tonti's assignment of its rights to Homestead. *Id.* at 309. That is, we stated that "Homestead may recover in the place of Tonti under the assignment of rights." *Id.*

We remanded, and pursuant to our decision, the district court granted Homestead's motion for summary judgment on the issue of Guarantee's liability for the entire cost of Tonti's defense of Payne's state court suit. Guarantee appealed that ruling, but the appeal was dismissed for lack of jurisdiction because it was not a final order of the district court.

On September 23, 2010, the district court issued its Findings of Facts and Conclusions of Law ("Findings") on the issue of the amount Guarantee was liable to Homestead. The district court ruled that: (i) Guarantee was liable to Homestead for all the costs of Tonti's defense of Payne's state court suit, in the amount of $98,993; (ii) Homestead was entitled to pre-judgment interest on the amounts incurred for Tonti's attorney's fees prior to the date of judicial demand at the customary rate under Louisiana law from the date of judicial demand to the date of judgment; (iii) Guarantee was liable to Homestead, through Tonti's assignment of rights to Homestead, for the attorney's fees Tonti expended in defending itself in the present litigation, i.e., the declaratory judgment action, in the amount of $50,527.16; (iv) Homestead was not entitled to pre-judgment interest on those attorney's fees; and (v) Homestead was not entitled to "bad faith" damages from Guarantee's violation of its duty of good faith and fair

No. 10-31099

dealing under La. Rev. Stat. § 22:1220, because Guarantee had not acted in bad faith.  The third and fifth rulings are before us on appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  As federal jurisdiction over this case is based on diversity, we follow Louisiana's substantive law, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997), but we apply the federal standard of review, s*ee Moore v. Johns-Manville Sales Corp.*, 781 F.2d 1061, 1063–64 (5th Cir. 1986).

The district court's determination that Guarantee did not act in bad faith under La. Rev. Stat. § 22:1220 is a question of law that we review de novo.  *See Pendarvis v. Am. Bankers Ins. Co. of Fl.*, 354 F. App'x 866, 869 (5th Cir. 2009) (unpublished).  Furthermore, we review the district court's award of attorney's fees to Homestead for abuse of discretion, the factual findings supporting the award for clear error, and the legal conclusions underlying the award de novo. *See Volk v. Gonzalez*, 262 F.3d 528, 534 (5th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 242–43 (5th Cir. 2011); *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 297 (5th Cir. 2007).  Because the "fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case," Louisiana law "controls both the award of and the reasonableness of fees awarded."  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461–62 (5th Cir. 2002); *accord Wal-Mart Stores, Inc.*, 647 F.3d at 242.  Lastly, we "may affirm the district court's judgment on any basis supported by the record."  *United States v. Le*, 512 F.3d 128, 134 (5th Cir. 2007) (citation and internal quotation marks omitted).

## III.

Homestead appeals the district court's determination that Guarantee did not act in bad faith under La. Rev. Stat. § 22:1220.  We agree that Guarantee did not act in bad faith under this section and thus affirm the district court's ruling.

No. 10-31099

## A.

Subsection A of La. Rev. Stat. § 22:1220 provides: "An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." Subsection B provides: "Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A: (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue. . . ." In addition to misrepresentation, Subsection B proscribes five other acts.

Louisiana case law has clarified that "[t]he term 'bad faith' is a generic term used to describe the conduct of an insurer who breaches its statutorily imposed duty to act in 'good faith' and engage in 'fair dealing'" by committing one of the six acts proscribed by La. Rev. Stat. § 22:1220(B). *Bourque v. Audubon Ins. Co.*, 704 So. 2d 808, 814 (La. Ct. App. 1997). Moreover, "[b]ad faith in handling insurance claims obviously includes something more than an evil intent. The facts and circumstances of each case must be evaluated to determine whether the insurer . . . breached" Subsection B. *Louis' Florist Shop of Lake Charles, Inc. v. United Fire & Cas. Co.*, 887 So. 2d 696, 699 (La. Ct. App. 2004). To assert a claim, "a plaintiff must allege that the defendant–insurer *knowingly* committed one of the acts set out in [the subsection]." *Spear v. Tran*, 682 So. 2d 267, 269 (La. Ct. App. 1996) (emphasis added).

With respect to the first act enumerated in Subsection B, "[m]isrepresentation can occur when an insurer either makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent facts to the insured." *Dufrene v. Gautreau Family, LLC*, 980 So. 2d 68, 85 (La. Ct. App. 2008) (holding that insurer breached Subsection B(1) by failing to produce coverage policies in response to a discovery request); *see also McGee v. Omni Ins.*

6

*Co.*, 840 So. 2d 1248, 1256 (La. Ct. App. 2003) (holding that insurer breached Subsection B(1) by failing to communicate plaintiff's settlement offer to insured); *Credeur v. McCullough*, 702 So. 2d 985, 987 (La. Ct. App. 1997) (holding that insurer breached Subsection B(1) by failing to provide counsel to insured after entering into settlement agreement whereby insurer expressly promised to do so). Subsection B(1) is "penal in nature and must be strictly construed." *Talton v. USAA Cas. Ins. Co.*, 981 So. 2d 696, 709 (La. Ct. App. 2008) (citation omitted).

## B.

The facts and circumstances of our case demonstrate that Guarantee did not knowingly misrepresent to Tonti any pertinent fact or policy provision relating to a coverage issue and that, therefore, Guarantee did not act in bad faith under La. Rev. Stat. § 22:1220(B)(1).

Homestead argues on appeal that Guarantee acted in bad faith by abruptly withdrawing its defense of Tonti after initially defending Tonti for twenty months without a reservation of rights. Guarantee explained to Tonti that it was withdrawing its defense because Payne's amended complaint had alleged an intentional tort, which was excluded under Guarantee's insurance contract with Tonti. But, Homestead argues, because Payne's original complaint had already alleged this intentional tort, there was no change in Payne's allegations that would have justified Guarantee's withdrawal. Homestead thus claims that in the course of withdrawing its defense, Guarantee misrepresented facts and policy provisions about coverage—including the fact of whether the amended complaint first put Guarantee on notice that a policy exclusion applied. Homestead further argues that the district court incorrectly found that Payne's amended complaint contained the first allegation of an intentional tort and first notified Guarantee of the policy exclusion. According to Homestead, because the district court relied on this erroneous factual understanding when it rejected

No. 10-31099

Homestead's claim of bad faith, the district court's determination as to bad faith should be reversed.

To be sure, the district court was wrong to assume that the amended complaint contained the first allegation of an intentional tort.[2] Nonetheless, we affirm the district court's ruling that Guarantee did not violate La. Rev. Stat. § 22:1220(B)(1). Homestead has presented no evidence that Guarantee *knowingly* misrepresented facts or policy provisions about coverage. While Guarantee initially provided for Tonti's defense, there is no evidence that Guarantee was aware that the original complaint contained an intentional tort allegation.[3] Even if Guarantee's initial defense of Tonti constituted a misrepresentation about coverage, the record does not show that this misrepresentation was made knowingly. Furthermore, the record shows that upon receiving the amended complaint, Guarantee noticed—for the first time—that Payne was alleging an intentional tort. Consequently, Guarantee withdrew its defense and delivered a letter to Tonti stating that the amended complaint "alleges an action that is not covered by [Guarantee]." By representing that the amended complaint alleged an intentional tort and that, therefore, Guarantee would not be providing coverage, Guarantee was not making a false representation. After all, it is

_____

[2] In its Findings, the district court stated: "Guarantee provided Tonti's defense in Payne's state court suit for 20 months, but withdrew from the representation when Payne amended his complaint to allege that his injury was caused by the intentional acts of another Tonti employee." This statement is incorrect. The original complaint was not amended to include an intentional tort allegation; rather, the original complaint itself contained an intentional tort allegation. The district court later stated: "Guarantee withdrew from providing the defense after Payne filed an amended complaint in which he alleged that his injury was caused by the intentional actions of another Tonti employee. At that point, Guarantee realized that Payne's claims may not have been covered by the insurance policy that it issued to Tonti because of a specific exclusion of an intentional tort of an employee." To the extent that this statement suggests that the amended complaint contained the first allegation of an intentional tort, the district court is, again, incorrect.

[3] Presumably, if Guarantee had known that the original complaint alleged an intentional tort, then Guarantee would have fought not to provide Tonti's defense in the first instance.

8

No. 10-31099

undisputed that Guarantee's policy did not provide coverage for intentional injury. Guarantee is liable for the underlying injury action only by waiver, not by contract. Guarantee's representation was thus truthful; it is true that the amended complaint alleged an action that was not covered by the policy. Overall, although Homestead conclusorily alleges a myriad of knowing misrepresentations, Homestead has failed to identify any misrepresentation that was made knowingly or any knowing representation that was made falsely. Because Guarantee did not knowingly misrepresent facts or policy provisions related to coverage, we hold that Guarantee did not act in bad faith under La. Rev. Stat. § 22:1220.[4]

## IV.

Guarantee cross-appeals the district court's award of attorney's fees in the amount of $50,527.16 to Homestead. We hold that granting the award was an abuse of discretion, and we vacate the award.

## A.

The district court ruled that Homestead was entitled to recover $50,527.16 in attorney's fees from Guarantee. Specifically, the court ruled that Tonti—and Homestead through the assignment of rights—was entitled to recover, against Guarantee, Tonti's attorney's fees in defending the declaratory judgment action that Homestead brought against Tonti and Guarantee to determine coverage. According to the district court, Guarantee had not only contracted with Tonti to provide worker's compensation insurance, but had also undertaken an obligation to defend Tonti against Payne's state court suit by providing for Tonti's defense for twenty months without a reservation of rights. When Guarantee withdrew the defense, Guarantee breached its obligations to Tonti, thereby causing

---

[4] Because we affirm the district court's determination that Guarantee did not act in bad faith under La. Rev. Stat. § 22:1220(B)(1), we do not reach the issue of "bad faith damages" compensable under the statute.

damage to Tonti by necessitating Homestead to step in, pay for Tonti's defense, and file the declaratory judgment action against Tonti and Guarantee. The district court found: "If Guarantee had not breached its obligations to Tonti, Homestead would not have been involved in the Payne litigation, and would not have filed this suit against Tonti and Guarantee." The district court cited Articles 1994 and 1995 of the Louisiana Civil Code, which provide that an obligor is liable for the damages caused by his breach, and ultimately found that "Tonti's attorneys fees in this matter are damages that resulted from Guarantee's breach of its obligations to Tonti, and Homestead, to whom Tonti has assigned its rights, is entitled to recover $50,527.16, the stipulated amount, for Tonti's attorneys' fees in defending this suit." Nonetheless, we conclude that it was error for the district court to determine that Tonti's attorney's fees were compensable as an element of damages caused by Guarantee's breach of its obligations to Tonti, because there is neither statutory nor contractual authorization for such an award.[5]

### B.

It is beyond peradventure that, under Louisiana law, attorney's fees are recoverable only if they are authorized by statute or by contract. *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 201 (La. 2008) ("Louisiana courts have long held that attorney's fees are not allowed except where authorized by statute or contract."); *Hernandez v. Harson*, 111 So. 2d 320, 327 (La. 1959); *Chauvin v. La Hitte*, 85 So. 2d 43, 45 (La. 1956) ("On numerous occasions this court has said that ordinarily attorney's fees are not assessable as an item of damages unless provided for by law or by contract. The clear import of the language of the opinions is that no award of them can be made if not so particularly

---

[5] Because we agree with the district court that Guarantee did not breach in bad faith under La. Rev. Stat. § 22:1220, we do not reach Homestead's alternative argument that Homestead was entitled to attorney's fees under La. Rev. Stat. § 22:1220.

authorized."); *Montz v. Theard,* 818 So. 2d 181, 192 (La. Ct. App. 2002) ("As a general rule, attorney's fees are not assessable as an item of damages except where provided by statute or by contract.").  A breach of contract action does not fall within one of the limited exceptions to the general rule; if the parties fail to expressly provide an obligation to pay attorney's fees, the law will not imply one. *Maloney v. Oak Builders, Inc.*, 235 So. 2d 386, 390 (La. 1970); *Rutherford v. Impson*, 366 So. 2d 944, 947 (La. Ct. App. 1978).  Because the award of attorney's fees is exceptional and penal in nature, attorney's fees statutes are construed strictly.  *Cracco v. Barras*, 520 So. 2d 371, 372 (La. 1988); *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So. 2d 1014, 1015–16 (La. 1984).

Plainly, there is no contractual authorization for the award at issue. Neither the district court nor Homestead identifies any provision in any contract that could be interpreted to require Guarantee to cover Tonti's attorney's fees in defending Homestead's declaratory judgment action.  *Cf. Steptore v. Masco Constr. Co., Inc.*, 643 So. 2d 1213, 1218 (La. 1994) ("[T]he insurance contract did not impose a duty on the insurer to pay attorney's fees in connection with the insured's pursuit of the coverage issue.").

Nor is there any statutory authorization for the award.  The district court suggested that Louisiana Civil Code Articles 1994 and 1995 authorized the award of attorney's fees as an item of damages caused by Guarantee's breach of its obligations to Tonti.   Under Louisiana law, however, attorney's fees characterized as breach of contract damages are not compensable under Article 1994 and its corresponding statutes.

While Louisiana Civil Code Article 1994 sets forth the familiar principle that "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation," Articles 1996 and 1997 develop this principle by explaining how it applies to good-faith and bad-faith breaches, respectively; Article 1996 states that "[a]n obligor in good faith is liable only for the damages

11

No. 10-31099

that were foreseeable at the time the contract was made," and Article 1997 states that "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Article 1995 provides that "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."

Louisiana case law compels the conclusion that Articles 1994 *et seq.* cannot support an award of attorney's fees to Tonti. To illustrate, in holding that Article 1997 could not serve as a statutory basis for a fee award, the Louisiana Supreme Court stated the following:

> Plaintiff argues that, pursuant to C.C. art. 1997, he is entitled to attorney's fees due to [Defendant's] bad faith breach of contract. Louisiana courts have long held that attorney's fees are not allowed except where authorized by statute or contract. Article 1997 reads in its entirety, "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Neither the statute nor the insurance contract mentions attorney's fees. In keeping with our past holdings, we find that in cases of breach of contract, Article 1997 does not provide for an award of attorney's fees.

*Sher*, 988 So. 2d at 201 (citations omitted). The *Sher* court's reasoning applies with equal force to Article 1997's counterpart, Article 1996. Indeed, none of the Articles 1994 *et seq.* specifically authorizes, or even mentions, attorney's fees. The statutes merely recite and encode elementary principles of contract law. Following the Louisiana Supreme Court's logic to its inexorable conclusion, Articles 1994 *et seq.* may not provide statutory authorization for an award of attorney's fees as an element of breach of contract damages. If Homestead cannot identify contractual authorization for Tonti's fee award, it should not look toward Articles 1994 *et seq.* for statutory help, for those codes will not avail it.[6]

---

[6] Prior to *Sher*, Louisiana courts routinely and consistently held that a good-faith contractual breach under Article 1995 or Article 1996 could not give rise to an award of attorney's fees as a measure of damages. *See Airline Const., Inc. v. Ted Hicks & Assocs., Inc.*, 506 So. 2d 554, 557–58 (La. Ct. App. 1987); *Lamonte v. Premier Sales, Inc.*, 776 So. 2d 493, 497

No. 10-31099

The Louisiana legislature's approach to other Louisiana codes and statutes supports the conclusion that Articles 1994 *et seq.* were not designed to authorize awards of attorney's fees. Unlike Articles 1994 *et seq.*, numerous other civil code provisions explicitly specify that attorney's fees are recoverable. *See, e.g.*, La. C.C. art. 2545 (buyer may recover fee from seller in redhibitory action if fraud on part of seller is established); La. C.C.P. art. 3506 (dissolution of attachment); La. C.C.P. Art. 595 (class action). Numerous Louisiana statutes also explicitly provide for attorney's fees. *See, e.g.*, La. Rev. Stat. § 9:3253 (lessee may recover fee for lessor's failure to timely return lessee's deposit); La. Rev. Stat. §§ 23:631, 23:632 (employee may recover fee for employer's failure to timely provide accrued salary post-termination); La. Rev. Stat. § 42:26 (prevailing party may

---

(La. Ct. App. 2000); *see also Delta Truck & Tractor, Inc. v. Navistar Int'l Transp. Corp.*, 833 F. Supp. 587, 590 (W.D. La. 1993) (finding that, under Louisiana law, art. 1995 and art. 1996 did not support fee award as item of damages for good faith contractual breach because "[t]hese articles make no mention of attorney's fees" and because agreement at issue did not provide for fees). Likewise, pre-*Sher*, the clear weight of Louisiana authority held that even a bad-faith contractual breach under Article 1997 could not give rise to an award of attorney's fees as a measure of damages. *See, e.g.*, *Lancaster v. Petroleum Corp. of Del.*, 491 So. 2d 768, 779 (La. Ct. App. 1986); *David Y. Martin, Jr., Inc. v. Heublein, Inc.*, 943 F. Supp. 637, 644 (E.D. La. 1996). Although a minority line of case law suggested that a bad-faith breach under Article 1997—or under its predecessor, Article 1934—*could* give rise to an award of attorney's fees as a measure of damages, these cases conceded and further confirmed that a good-faith breach could never do so; that is, these cases considered bad faith or fraud an exception to the general rule against awarding attorney's fees as an item of contract damages. *See Raney v. Gillen*, 31 So. 2d 495, 497–98 (La. Ct. App. 1947); *Berry v. Ginsburg*, 98 So. 2d 548, 551–52 (La. Ct. App. 1957); *Cobb v. Gallet*, 392 So. 2d 134, 135 (La. Ct. App. 1980); *Rye v. Terminix Serv. Co., Inc.*, 423 So. 2d 754, 757 (La. Ct. App. 1982). The majority of Louisiana courts departed from and overruled this minority line, maintaining that Article 1934/1997 could not authorize attorney's fees as damages. *Lloyd v. Merit Loan Company of Shreveport, Inc.*, 253 So. 2d 117, 120 (La. Ct. App. 1971) (holding that art. 1934 cannot authorize fee award as item of breach of contract damages because it does not mention attorney's fees, whether or not breach was in bad faith, and overruling the *Raney/Berry* line); *Rutherford v. Impson*, 366 So. 2d 944, 947 (La. Ct. App. 1978); *see also Delta Truck & Tractor,* 833 F. Supp. at 590 (noting, pre-*Sher*, that although "neither the Louisiana Supreme Court nor the U.S. Fifth Circuit has issued an opinion directly ruling on the issue of whether Article 1997 allows for attorney's fees to be recovered for bad faith breach of contract," "this issue is by no means novel and has been answered clearly in the negative by various Louisiana courts of appeal."). In any event, *Sher* foreclosed the minority line. Now, Louisiana law holds that Articles 1994 *et seq.* cannot authorize an award of attorney's fees as a measure of breach of contract damages.

13

No. 10-31099

recover fee under Louisiana Open Meeting Law for bringing action).[7]   And certain statutes relating to insurance explicitly specify attorney's fees. *See, e.g.*, La. Rev. Stat. § 23:1201 (successful worker's compensation claimant may recover fee from employer or insurer). "Clearly, the Louisiana legislature contemplates the propriety of attorney's fees in drafting its damage provisions and includes them when it feels they are appropriate. The Louisiana legislature did not include attorney's fees as an element of damages recoverable under [Articles 1994 *et seq.*] and we may not question their judgment." *See Delta Truck*, 833 F. Supp. at 591.

Finally, we note the principle laid down by the Louisiana Supreme Court in the oft-cited *Steptore v. Masco Construction Company*: "Generally,  if the insured hires an attorney to represent him in coverage disputes, he will have to bear those costs himself."   643 So. 2d at 1218; *accord Tillman v. Custom Aggregate*, 686 So. 2d 118, 120 (La. Ct. App. 1996).   Absent statutory or contractual authorization for the fee award here, we are unaware of a policy consideration that would move us to depart from this principle and relieve Tonti of its presumptive fee burden.

## C.

The district court erred in concluding that Article 1994 could authorize an award of attorney's fees as an element of breach of contract damages. The district court further erred when it determined that Tonti's attorney's fees were compensable as damages caused by Guarantee's breach of its obligations to

---

[7] *See also* La. Rev. Stat. § 9:4855 (property owner may recover fee in action against contractor for fraud in connection with perfection of contractor's lien). La. Rev. Stat. § 9:3902 (creditor may recover fee if bond surety fails to pay obligation); La. Rev. Stat. § 23:303(B) (defendant in frivolous employment discrimination action may recover fee); La. Rev. Stat. § 9:2782, *et seq.* (suits on dishonored checks);  La. Rev. Stat. § 9:2781 (suits on open accounts); La. Rev. Stat. § 51:1409(A) (unfair trade practice in repossessing goods);  La. Rev. Stat. § 19:201 (expropriation);  La. Rev. Stat. § 46:1820 (crime victim reparation); La. Rev. Stat. § 9:398.1 (paternity).

14

No. 10-31099

Tonti.  Therefore, the district court abused its discretion in ruling that Homestead, by way of the assignment from Tonti, was entitled to recover $50,527.16, the amount of Tonti's attorney's fees in defending the declaratory judgment action by Homestead.

## V.

Because Guarantee did not breach La. Rev. Stat. § 22:1220 (now La. Rev. Stat. § 22:1973), we AFFIRM the district court's ruling as to bad faith.  Because the district court's award of $50,527.16 in attorney's fees was an abuse of discretion, we VACATE the award of attorney's fees.

**AFFIRMED, VACATED.**